## William Hunt *vs.* Caroline A. Frost, Administratrix

Where two parties enter into a mutual agreement, which is evidenced by a paper signed by each and given to the other, the two instruments are to be taken and construed together as one.

An agreement, by an administrator or guardian, to offer the real estate of his intestate or ward for sale by auction, and to sell the same to a particular individual, for an agreed price, provided no higher sum should be bid, is valid. But such an agreement to sell the estate at a fixed price, without regard to the biddings, is fraudulent and void.

This was an action of assumpsit brought by the plaintiff against the defendant, as administratrix of George Frost, and was tried before *Dewey*, J., in this court.

The declaration contained two special counts, in one of which the promise declared on was alleged to have been made by the defendant, " as the administratrix of George Frost," and in the other by " the said Caroline A." Both counts were to recover damages for the breach of the following agreement: —

" In consideration of one dollar to me paid by William Hunt, 2d, I promise and agree to sell to said Hunt, under the direction of the court of probate, at such time as shall be

permitted, the following described lot of land, belonging to the heirs of Dr. George Frost, viz.: sixty feet front on Spring street, running back the entire width of the lot of land lying north of the old house, being the first lot of land according to a plan now in my possession, for which said Hunt agrees to pay the sum of four hundred dollars, two hundred dollars on the delivery of the deed, and two hundred to remain on mortgage five years;" dated " Springfield, March 6th, 1847," and signed " W. Thompson, attorney and agent for Caroline A. Frost, administratrix of George Frost."

At the trial, it appeared in evidence, or was admitted, that Dr. George Frost, the owner of the lot of land described in the foregoing agreement, deceased intestate, leaving the defendant, his widow, and two minor children, Caroline L. Frost and George L. Frost; that the defendant was duly appointed administratrix on the estate, and guardian of her son, George L. Frost; and that Wellington Thompson, esquire, was duly appointed guardian of the daughter, Caroline L. Frost.

It also appeared, that at the time of the execution and delivery of the agreement above mentioned, the following writing was executed by the plaintiff, and delivered by him to Thompson for the defendant:

" In consideration of one dollar to me in hand paid by W. Thompson, agent and attorney for Caroline A. Frost, administratrix of George Frost, I agree to purchase at public auction, at such time as the court of probate shall permit," the lot described in the agreement above mentioned, " and to pay therefor the sum of four hundred dollars, two hundred on the delivery of the deed and two hundred dollars in five years from date, and secure the same by mortgage. Springfield, March 6th, 1847."

It also appeared, that on the 2d of March, 1847, before the making of the agreement, Thompson as guardian of Caroline L. Frost, and the defendant as guardian of George L. Frost, presented separate petitions to the court of probate for the county of Hampden, for license to sell the shares of their respective wards in certain real estate descended to

them from their father, including the lot in question; and that on the 6th day of April, 1847, such license was duly granted; that Thompson and the defendant offered the real estate of their wards for sale at public auction, on the 1st of May, 1847, pursuant to the license of the probate court; and that the lot in question, after several bids by the plaintiff and others, was finally struck off to the plaintiff for the sum of $600; that the plaintiff, on the 18th of March, 1848, duly tendered to the defendant $200 in money, and notes, and a mortgage of the land for $200 more, according to the agreement declared on; but that the defendant declined to make a conveyance to the plaintiff for that amount.

The defendant objected that the contract declared upon was void or voidable for illegality, and that the plaintiff could not recover damages for any breach of it. But the presiding judge, for the purposes of the trial, ruled otherwise, and reserved the question for the full court.. The jury returned a verdict for the plaintiff for $200.

The case was argued at the September term, 1848.

*H. Morris,* for the defendant.

*R. A. Chapman* and *W. G. Bates,* for the plaintiff.

SHAW, C. J. There are so many objections to the maintenance of this action, that the difficulty seems to be, rather in selecting the most decisive, than in finding an adequate one.

1. In the first place, the defendant is sued as administratrix. She is not only so described in the writ, but in the first special declaration she is alleged to have made the promise declared on as the administratrix of George Frost. But this is a promise, which, in her representative capacity, she had no power to make; nor could she bind the estate of her intestate by it. The decision in *Fairfield* v. *Williams,* 4 Mass. 427, is not an authority for this case; there the administrators bound themselves, in their own right, to procure and convey a good title, and were sued in their private capacity It was decided on the pleadings without argument.

2. The promise to sell under the direction of the probate court, and at such time as such court would permit, is mani-

festly conditional. Knowing what the nature of the authority and jurisdiction of the court of probate is, the stipulation must be understood provisionally, viz., to make such conveyance, if the court of probate will give such direction and grant such permission. No such license or authority was ever granted to her, in her capacity as administratrix. No want of the proceeds, for payment of debts, is shown to exist, and no case requiring or warranting such a license. The license granted to her in another capacity, as guardian of one of her children, jointly with Thompson, the guardian of the other child, is not a fulfilment of the condition. It is not stated in the declaration, that any license was ever granted to the defendant, as administratrix, to sell the estate of the intestate for payment of debts or otherwise. It appears that the plaintiff did not consider the sale at auction made by the defendant and another person, as guardians, to be the sale contemplated in his agreement, because he attended and bid off the land at a sum beyond that stipulated by the agreement; or, if he did consider it the same, the bidding of a larger sum would seem to be a waiver of the agreement.

3. But without suggesting further objections, which may be considered technical, we prefer to consider the question on its merits.

In order, then, to understand what the objection of the defendant was, it is necessary to take the two papers, signed and mutually exchanged at the same time, and constituting together parts of one and the same agreement.

The part of the contract which was signed by the plaintiff and given to the defendant is, in consideration of one dollar paid by her, as administratrix, &c., an agreement to purchase, at such time as the court of probate shall permit, the property (described), and to pay therefor the sum of $400, &c. It is difficult to understand what the parties intended. A stipulation to purchase an estate at auction, at a fixed price, seems to be something like a contradiction in terms, because an auction implies a free competition amongst bidders, which must leave the price uncertain, until ascertained by the event.

The stipulation, on the part of the defendant, to sell to the plaintiff, does not, in terms, engage her to sell at auction; but when it is considered, that an administratrix can sell in no other mode, and that her undertaking is to be construed with his, the construction of her stipulation would seem to be, to sell at auction. This would involve the same absurdity of a promise to sell at auction at a fixed price, when an auction implies an uncertain price, until fixed by the close of the biddings.

Taking this to be their agreement, and in order to give a reasonable construction to it, it has occurred to us to construe it to be a stipulation, on the plaintiff's part, to offer at auction the sum of $400, and a stipulation, on the part of the defendant, to offer the land at auction, and to sell it to the plaintiff at $400, if no one should bid higher. Such an agreement would be consistent with the duty of an administrator or guardian, and might be a reasonable precaution to prevent the estate from being sold at a price greatly below its value. But, of course, if such were the legal effect of the agreement, it must have been with the understood condition, on both sides, that if any one should bid higher, the agreement would be at an end. Nor would this be injurious to the party intending to purchase, because he would not be restrained by his agreement from bidding more than the stipulated sum, in competition with other bidders. If such was the legal effect of this agreement, it is very clear that there was no breach of the defendant's promise, because the biddings at auction alleged by the plaintiff to be the auction contemplated did exceed $400. But perhaps this was not the understanding the parties had of the legal effect of their agreement, and we have not thought it necessary to put the decision upon that ground.

4. But, taking the case as it has been presented to us, that of an administrator or guardian proposing to sell the estate of an intestate or ward under a license of court; and the former should stipulate to sell, under the forms of an auction, and the other party to buy, at a fixed price, without regard to the biddings to be made at such auction; the court are all of

opinion that such an agreement would be fraudulent and void.

The law supposes that the administrator or guardian has no interest of his own to pass by deed; that he executes a mere naked power, vested by law in such persons, acting officially, and this upon very strict conditions. If the conditions are not complied with, the power is not well executed, and no estate passes by the deed.

All the statute directions are framed with a view to insure a perfect, unrestrained and honest competition amongst purchasers, and thus to obtain the highest price. Every such sale is required to be made by public auction. Rev. Sts. *c.* 71, § 17. Public auction, *ex vi termini*, is an open, public, free sale, at a time and place fixed by long, wide spread and ample notice specially prescribed. The sale may be adjourned. §§ 17, 18. Public notice of the time and place is to be given. § 15. The administrator, before fixing on a time and place of sale, is required to take and subscribe an oath, that in disposing of the estate, he will use his best judgment, in fixing on the time and place, and exert his utmost endeavors to dispose of the same, in such a manner as will be most for the advantage of all persons interested therein. These provisions are all inconsistent with the idea that he can sell by private contract, or make such a bargain, as in effect to limit and fix the price by private contract, under the forms of an auction sale.

If such a contract were held valid, it would create a direct interest, on the part of the guardian or administrator, to prevent the biddings from rising higher than the stipulated price, and would be in that respect contrary to his duty and his oath. Being contrary to public policy, in a matter designed to protect the rights of those who are wholly incapable of protecting themselves, it is not voidable only, but void.

It was stated, on the opening of the argument for the defendant, that if the agreement was fraudulent, the fraud was all on the side of the defendant; because the plaintiff did not know that she was an administratrix. It would seem, that in making this statement, the learned counsel overlooked

the obvious fact, that the stipulation, on which the plaintiff relies and brings his suit, was signed for the defendant, by her attorney, " as administratrix of George Frost;" and in the paper simultaneously executed by him and delivered to her, he stipulates with her as the administratrix of George Frost, to purchase of her, at public auction, at such time as the court of probate shall permit.

Taking this as a contract, which could only be made by the defendant, as administratrix or guardian, by license of court, and that by auction to the highest bidder; if it was a contract to sell to him at the sum named, if no one should bid higher, it has not been broken, because others did bid higher. If it went further, and amounted to an absolute undertaking to sell to him, at a fixed price, in the event that others should bid higher, as they in fact did, it was contrary to law, contrary to public policy, a fraud upon others, in the execution of a trust created by law for the benefit of persons incapable of protecting their own rights, and as such, a con- tract which the law will not lend its aid to enforce.